**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

CATHERINE E. WEITZEL and DAVID
A. SERGEANT, TRUSTEE IN THE
BANKRUPTCY ESTATE OF
CATHERINE E. WEITZEL,

        Plaintiffs,

vs.

CERRO GORDO COUNTY, IOWA;
PAUL MARTIN, Individually and in his
official capacity; SANDRA MURPHY,
individually and in her official capacity,

        Defendants.

No. C 04-3002-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      *1.  The parties and their roles* . . . . . . . . . . . . . . . . . . . . . . 3
      *2.  The circumstances* . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      *3.  Allegations of discrimination and retaliation* . . . . . . . . . . . . 7
   *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      *1.  The Complaint* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      *2.  The motion for summary judgment* . . . . . . . . . . . . . . . . . 10

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   *A. Standards For Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . . 10
   *B. Weitzel's Age Discrimination Claims* . . . . . . . . . . . . . . . . . . . . . . 12
      *1.  Merits of the claims* . . . . . . . . . . . . . . . . . . . . . . . . . 13
          *a.  Arguments of the parties* . . . . . . . . . . . . . . . . . . 13

|  |  | **b.** | **Analysis** | 15 |
|--|--|--------|--------------|----|
|  |  |  | **i.** | **State and federal claims** | 15 |
|  |  |  | **ii.** | **The burden-shifting analysis** | 16 |
|  |  |  | **iii.** | **The plaintiff's prima facie case** | 17 |
|  |  |  | **iv.** | **Legitimate reasons and pretext** | 19 |

Has the plaintiff county employee generated genuine issues of material fact on her claims of age discrimination in violation of state and federal law, claims of "interference" with and "retaliation" for exercising rights under the Family and Medical Leave Act (FMLA), and claims pursuant to 42 U.S.C. § 1983, or was she simply fired for poor performance before and after taking medical leave? The parties see the answer to this question differently, but the question on the defendants' motion for summary judgment is how a reasonable jury could see the evidence in the case.

      **b.**    **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
          **i.**     **State and federal claims** . . . . . . . . . . . . . . . 15
          **ii.**    **The burden-shifting analysis** . . . . . . . . . . . 16
          **iii.**   **The plaintiff's prima facie case** . . . . . . . . . . 17
          **iv.**   **Legitimate reasons and pretext** . . . . . . . . . . . 19
  **2.**    **Age discrimination claims pursuant to § 1983** . . . . . . . . . . 23
      **a.**    **Arguments of the parties** . . . . . . . . . . . . . . . . . . . 23
      **b.**    **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
  **3.**    **Individual liability** . . . . . . . . . . . . . . . . . . . . . . . . . . 26
      **a.**    **Arguments of the parties** . . . . . . . . . . . . . . . . . . . 26
      **b.**    **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
**C.**  **Weitzel's FMLA Claims** . . . . . . . . . . . . . . . . . . . . . . . . . . 28
  **1.**    **Arguments of the parties** . . . . . . . . . . . . . . . . . . . . . 28
  **2.**    **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Has the plaintiff county employee generated genuine issues of material fact on her claims of age discrimination in violation of state and federal law, claims of "interference" with and "retaliation" for exercising rights under the Family and Medical Leave Act (FMLA), and claims pursuant to 42 U.S.C. § 1983, or was she simply fired for poor performance before and after taking medical leave? The parties see the answer to this question differently, but the question on the defendants' motion for summary judgment is how a reasonable jury could see the evidence in the case.

## I.  INTRODUCTION

### A.  Factual Background

The court will not attempt here an exhaustive dissertation of the undisputed and disputed facts in this case. Rather, the court will identify the core of undisputed facts and sufficient of the disputed facts to put in context the parties' arguments for and against summary judgment.

#### 1.  The parties and their roles

Defendant Paul Martin, the Cerro Gordo County Attorney, hired plaintiff Catherine "Duffy" Weitzel in late October 1997, as the Victim Witness Coordinator for the Cerro Gordo County Attorney's Office (the County Attorney's Office). Weitzel was fifty-two years old at the time that Martin hired her. Weitzel had a bachelor's degree and had worked as a social worker prior to her employment with the County Attorney's Office. Non-party Denise Timmons became Weitzel's supervisor when Timmons was hired on February 9, 1998, but defendant Sandra Murphy became Weitzel's direct supervisor shortly after Murphy joined the County Attorney's Office in November 1999, as the prosecutor for the Violence Against Women Program. Although Murphy was Weitzel's supervisor, the defendants contend that only County Attorney Martin had the authority to hire, discipline, or fire employees of the County Attorney's Office, which Weitzel disputes. Non-party Paige Merril was hired as the office manager for the County Attorney's Office in February 2001, replacing Linda Saige. Timmons and Saige, like Weitzel, were over forty years of age, but their replacements, Murphy and Merrill, were both under forty years of age.

## 2. *The circumstances*

The position of Victim Witness Coordinator was new when Weitzel was hired to fill it. The position was funded in large part by a competitive grant. The parties agree that the position was initially developed to place a priority on crisis response to victims and witnesses. However, Weitzel contends that the specific duties of the position were initially only vaguely defined, which the defendants dispute. What the parties do not dispute is that Weitzel initially performed the position quite well; indeed, Weitzel contends that she helped "pioneer" and "define" the position for the County Attorney's Office.

The parties dispute the extent to which Martin and Murphy began to redefine the Victim Witness Coordinator position during 2000 and 2001 to place less of a priority on crisis response and more on duties of administrative coordination. The parties also dispute the extent to which Weitzel was involved in meetings with Martin and Murphy as part of the redefinition of her position. However, the parties agree that Weitzel was given a written job description for her position at some point, either in August 2000, as the defendants assert, or not until August 2001, as Weitzel contends. The parties also dispute the extent to which Martin believed that Weitzel was having difficulty making the transition to her newly-defined duties.

Although Weitzel had received positive performance reviews while Ms. Timmons was her supervisor, on January 18, 2001, Weitzel received a less positive performance review that Weitzel contends was authored by Murphy. The defendants contend that Martin wrote the review with input from Murphy. This written "performance review" showed "Improvement needed" in three of eleven categories: "Quality" of work performed, "Availability," and "Initiative." Weitzel submitted a written response to this evaluation stating her disagreement with the evaluation in several categories, not just the ones in which she had been rated "Improvement needed." In that response, Weitzel also

suggested, *inter alia*, that she have meetings with Martin and the office manager to exchange information about her job requirements and performance. Weitzel contends, contrary to the defendants assertions, that she was not aware that this performance evaluation was such that she could have been terminated.

The parties agree that on August 30, 2001, Weitzel formally requested medical leave for urinary tract surgery. Weitzel contends that she had notified Martin of her need for such leave early in August. Weitzel began her leave on September 25, 2001. She suffered some complications from her surgery, which extended her stay in the hospital and complicated her recovery. Therefore, although Weitzel was initially expected to return to work on November 8, 2001, Martin agreed to extend her leave, so that she did not return to work until November 15, 2001.

Prior to her surgery, while working full-time for the County Attorney's Office, Weitzel had also been working part-time for Gerard of Iowa as an in-home family therapist or counselor. After her surgery, but while still on medical leave from the County Attorney's Office, Weitzel resumed working part-time for Gerard. Weitzel worked 32.5 hours for Gerard from October 19, 2001, through November 2, 2001, while on leave from the County Attorney's Office. Weitzel contends that the duties and physical demands of her part-time position with Gerard were significantly different from those of her position with the County Attorney's Office, such that she could perform her part-time job with Gerard shortly after her surgery, but could not immediately perform her full-time job with the County Attorney's Office. The parties agree that Martin called Weitzel while she was on leave and asked her to come into the County Attorney's Office to meet with him, but that Weitzel declined to do so, because she was on medical leave.

When Weitzel received a doctor's release, she returned to work full-time in the County Attorney's Office on November 15, 2001. Weitzel contends that she did not return

to the "same job," because her job duties had been significantly changed while she was out on medical leave, which the defendants deny. Weitzel also contends, and the defendants deny, that shortly after her return to work, Martin accused her of "milking the system." The defendants do acknowledge, however, that Martin questioned how Weitzel could work for Gerard part-time while she was on medical leave from the County Attorney's Office.

It is clear that the downturn in the parties' relationship continued after Weitzel returned to work, although the parties dispute the reasons why. Almost immediately after her return to work, Weitzel had a performance review on November 16, 2001. Weitzel contends that she was not due for such a review until January 2002, but the defendants contend that all employees of the County Attorney's Office received performance reviews in November 2001. The parties also dispute who had input into Weitzel's performance review: Weitzel contends that Murphy and Merrill had significant input, but the defendants contend that their input, if any, was less significant than Martin's. In any event, Weitzel's performance review in November 2001 indicated "Improvement needed" in all eleven categories. The defendants contend that Weitzel was informed that this review could lead to her termination. Weitzel admits that she was given until January 11, 2002, to improve her performance. At the time of the review, Weitzel again disputed its accuracy, but she contends that she requested regular meetings with Martin and Murphy in an effort to improve her performance. The defendants, on the other hand, contend that they required such meetings weekly. Weitzel contends that Martin and Murphy were rarely available for such meetings, although the defendants contend that they met with Weitzel whenever she actually set up such a meeting.

Whoever requested or required the meetings, the parties agree that such meetings occurred on November 28, 2001, December 7, 2001, and December 20, 2001. However, the defendants contend that this was only about half the number of meetings that they had

demanded. Weitzel admits, or does not expressly dispute, that during the meetings actually held, she was shown a number of documents on which she had made mistakes since her return to work from medical leave. The parties agree that proper documentation was important, in part, because Weitzel's position was funded by grants and the funding body required accurate periodic reports as a condition of funding. In addition to the regular meetings to review her performance, the defendants contend that Weitzel was given until December 31, 2001, to complete work on the Victim Witness Program Database. Weitzel contends that such a deadline was impossible to meet, owing to problems with the database system. Weitzel contends that she had brought these problems to the attention of the computer department. Weitzel contends that she spent extra time in December attempting to complete data entry into the database, but was informed by the computer department that the system was not working properly.

On January 11, 2002, Weitzel was terminated. The defendants contend that the termination was owing to Weitzel's failure to improve her work performance and that is the reason they gave Weitzel at the time. However, Weitzel contends that some "others," presumably meaning co-workers other than Martin, Murphy, and Merrill, had noticed an improvement in her performance, so that her performance was not the real basis for her termination. Weitzel was fifty-six years old at the time of her termination. She was replaced by a twenty-three-year-old woman named Amy Ritzman.

### 3. *Allegations of discrimination and retaliation*

Weitzel asserts that she was terminated because of her age and in retaliation for taking medical leave, which the defendants deny. More specifically, Weitzel asserts that her performance reviews had been positive while she was supervised by Ms. Timmons, who was also over forty years of age, but that after defendant Murphy and Ms. Merrill, both of whom are under forty, began to provide input for her performance reviews, her

reviews were increasingly negative. Indeed, Weitzel alleges that Martin allowed these two younger women to "run the department," notwithstanding that the prior office manager, Linda Saige, who was over forty years of age, had not had such authority. Weitzel contends that, at least in part owing to Ms. Merrill's influence, defendant Martin stopped sending her to meetings relevant to the performance of her job. She also contends that defendant Murphy began to change her job duties shortly after she notified the County Attorney's Office informally that she would need to take medical leave.

The defendants deny these allegations. They contend that Weitzel's poor work performance, discovered before, during, and after Weitzel's medical leave, justified her termination. They also expressly allege that defendant Murphy did not have the same difficulties with utilizing the database program that purportedly prevented Weitzel from completing her work on that project. Weitzel asserts that allegations of poor work performance are belied by the fact that she received timely "merit increases" in pay. The defendants contend that some or all of the supposed "merit increases" were in fact cost-of-living adjustments given to all non-bargaining unit employees. They contend that Cerro Gordo County does not give "merit" raises.

### B. Procedural Background

Weitzel filed a timely administrative complaint of age discrimination with the Mason City Human Rights Commission, and the defendants do not dispute that she exhausted her administrative remedies. Weitzel then filed the present lawsuit on January 5, 2004.

### 1.   *The Complaint*

In her original Complaint in this action, Weitzel named as defendants Cerro Gordo County and the County Attorney's Office, as well as Paul Martin and Sandra Murphy individually and in their official capacities.   The defendants answered the original Complaint on February 25, 2004.  Weitzel subsequently filed an Amended Complaint on December 28, 2004, identifying the plaintiff as David Sergeant, Trustee for the Bankruptcy Estate of Catherine Elizabeth Weitzel.  In the Amended Complaint, the Trustee alleges that Weitzel filed for bankruptcy  and that the bankruptcy estate is, therefore, the real party in interest.  The defendants have not disputed the Trustee's right to pursue this lawsuit on behalf of the bankruptcy estate;  indeed, they have never answered the Amended Complaint.  For the sake of convenience, however, the court will continue to identify the plaintiff as Weitzel.

In her Amended Complaint, as in her original Complaint, Weitzel asserts four causes of action:  (1) discriminatory termination because of age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*; (2) discriminatory termination because of age in violation of the Iowa Civil Rights Act (ICRA), IOWA CODE CH. 216, and the Mason City Human Rights Code (MCHRC); (3) interference with her rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615 *et seq.*, and retaliation for exercising such rights; and (4) "deprivation of federal rights" pursuant to 42 U.S.C. § 1983.   She seeks, variously, lost wages and benefits, past and future; compensatory damages, past and future; punitive damages and/or liquidated damages; and attorney fees and costs.  The defendants deny these claims.  This matter is set for trial beginning on June 27, 2005.

### 2.    *The motion for summary judgment*

On February 25, 2005, the defendants jointly filed their Motion For Summary Judgment (docket no. 24), seeking summary judgment in their favor on all of Weitzel's claims. Weitzel resisted the motion for summary judgment on March 31, 2005 (docket no. 30), and the defendants filed a reply in further support of their motion on April 6, 2005 (docket no. 31). Although it has been the court's strong preference over the years to grant oral arguments whenever requested, no party requested oral arguments on the motion for summary judgment in this case. Moreover, the court's busy schedule—including post-trial motions in one federal death-penalty case and pre-trial motions, jury selection, and the start of trial in another—has not permitted the timely scheduling of oral arguments sufficiently in advance of trial in this matter to permit timely resolution of the motion for summary judgment. Finally, the court has not found oral arguments necessary to the resolution of the defendants' motion for summary judgment in this case, not least because of the thorough briefing of all issues by the parties. Therefore, the court will resolve the defendants' motion for summary judgment on the parties' written submissions.

## II.  LEGAL ANALYSIS

### A.  *Standards For Summary Judgment*

The parties here agree generally on the standards applicable to a motion for summary judgment. Rule 56 of the Federal Rules of Civil Procedure provides that a defending party may move, at any time, for summary judgment in that party's favor "as to all or any part" of the claims against that party. FED. R. CIV. P. 56(b). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." FED. R. CIV. P. 56(c). As this court has explained on a number of occasions, applying the standards of Rule 56, the judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir. 1990). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Quick*, 90 F.3d at 1377 (same).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1107 (8th Cir. 1998); *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir. 1993). When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997), *cert. denied*, 523 U.S. 1040 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir. 1995); *Beyerbach v. Sears*, 49 F.3d 1324, 1325 (8th Cir. 1995). An issue of material fact is "genuine" if it has a real basis in the record. *Hartnagel*, 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *i.e.*, are

"material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Beyerbach*, 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994). Finally, this court has repeatedly taken note of the rule in this circuit that, because summary judgment often turns on inferences from the record, summary judgment should seldom or rarely be granted in employment discrimination cases. *See, e.g., Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir. 1991)).

The court will apply these standards to the motion for summary judgment by the defendants on Weitzel's claims.

## B. Weitzel's Age Discrimination Claims

The court will consider, first, the defendants' motion for summary judgment on Weitzel's claims of age discrimination in violation of the ADEA, the ICRA, and the MCHRC, and that part of her claim pursuant to 42 U.S.C. § 1983 based on violation of the ADEA. These claims center on Weitzel's allegation that her age was a "motivating factor" in her termination from her job as Victim Witness Coordinator with the County Attorney's Office. *See* Amended Complaint, First Cause of Action, ¶ 39 (age

discrimination in violation of the ADEA); Second Cause of Action, ¶ 44 (age discrimination in violation of the ICRA and MCHRC); Fourth Cause of Action, ¶¶ 54-56 (realleging all preceding allegations and asserting that the conduct of the defendants "violated the Plaintiff's federal statutory rights and privileges, and as such are a direct violation of 42 U.S.C. § 1983").[1] The defendants attack not only the merits of the age discrimination claims, but the liability of individual defendants Martin and Murphy on an age discrimination claim under the ADEA. The court will take up the questions of the viability of a claim of age discrimination pursuant to § 1983 and individual liability for age discrimination only if the plaintiff's age discrimination claims are otherwise viable.

### 1. Merits of the claims

#### a. Arguments of the parties

The defendants note that Weitzel's federal and state age discrimination claims are subject to the same standards and that, consequently, all such claims founder on the same failings. Specifically, they contend that it is clear that Weitzel cannot establish a *prima*

---

[1]One cannot "violate § 1983." On its own, 42 U.S.C. § 1983 provides no substantive rights. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). Therefore, "[o]ne cannot go into court and claim 'a violation of § 1983,' for § 1983 by itself does not protect anyone against anything, but simply provides a remedy." *Id.* at 600, 99 S. Ct. 1905; *accord Albright v. Oliver*, 510 U.S. 266, 270 (1994). ("Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'") (per Chief Justice Rehnquist, with three Justices joining, two Justices concurring, and two Justices concurring in judgment) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)); *Maine v. Thiboutot*, 448 U.S. 1, 3 (1980) (discussing the remedial nature of § 1983 and stating, "[c]onstitution and laws" means that § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution); *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 685 (1978) (§ 1983 was designed to provide a "broad remedy for violations of federally protected civil rights"). Thus, Weitzel's § 1983 claim must be read to allege violations of other federal laws that are actionable pursuant to § 1983.

*facie* case of age discrimination, because she cannot show that she was performing her job at a level that met her employer's legitimate expectations, where she had been receiving performance evaluations documenting poor performance for nearly a year before her termination. They contend that even such subjective evaluations can constitute legitimate bases for an employment decision. They also point out that Weitzel's work did not improve after she was given express notice that improvement was required to avoid termination, that she failed to schedule several required "corrective action" meetings, and that she failed to complete the implementation of the victim witness database program.

Assuming for the sake of argument that Weitzel *was* meeting her employer's legitimate expectations, the defendants contend that her age discrimination claims nevertheless fails, because Weitzel cannot rebut their legitimate reasons for her discharge. They contend that Weitzel must not only show that the employer's proffered reasons for its actions are a pretext, but that those actions are a pretext *for age discrimination*, based on something more than just her *prima facie* case. They assert that Weitzel cannot meet these burdens, where her work performance was inadequate—indeed, so inadequate that Martin feared it might jeopardize grant funding for her position. They also contend that Weitzel has not come forward with any evidence sufficient to show that these legitimate business reasons for her termination are either pretextual or that the real reason was age discrimination. In response to Weitzel's argument that Martin favored younger employees, the defendants point out that Martin had hired Weitzel when she was already fifty-two years old, barely five years before her termination, which they contend undercuts any inference that Weitzel's age was the real reason for her termination.

Weitzel does not assert that there is any critical distinction between her federal and state claims of age discrimination. Rather, she argues that both claims survive, because she can establish both a *prima facie* case and pretext. Contrary to the defendants'

contentions that she was not performing her job to her employer's reasonable expectations, and thus cannot establish a *prima facie* case of age discrimination, Weitzel contends that she received good job reviews until she was supervised by a younger woman, defendant Murphy, and another younger office manager, Ms. Merrill, began to have unusually substantial input into her evaluations. She contends that she can show "pretext," because she can point to anecdotal evidence that Martin treated younger employees differently; that he allowed Ms. Merrill to have undue input into criticism of Weitzel's job performance, when he had not considered any such input from Ms. Merrill's older predecessor; Martin relied on the advice of another younger employee, defendant Murphy, regarding Weitzel's performance; and Weitzel had better education and experience than her younger replacement.

### b. *Analysis*

### i. *State and federal claims*. Although Weitzel alleges age discrimination in violation of the ADEA, the ICRA, and the MCHRC, the parties assert that all such claims stand or fall on the same showings. They represent that the MCHRC incorporates the anti-discrimination provisions of the ICRA, so that no separate analysis of the state and municipal age discrimination claims is required. They also assert that claims of age discrimination in violation of Iowa law are analyzed according to the same standards as federal claims pursuant to the ADEA. The court agrees.

First, the parties have not pointed to any difference between the ICRA and the MCHRC that might require separate analysis of those claims. Furthermore, Iowa courts have recognized that the ICRA is modeled after federal anti-discrimination laws, so that Iowa courts have traditionally looked to federal law for guidance in interpreting the ICRA, even though federal law is not binding on comparable state-law claims. *See, e.g., Pecenka v. Fareway Stores, Inc.*, 672 N.W.2d 800, 803 (Iowa 2003) ("Because the ICRA is

15

modeled after the federal legislation, Iowa courts have traditionally looked to federal law for guidance in interpreting it. *Vivian v. Madison*, 601 N.W.2d 872, 873 (Iowa 1999). Iowa courts, however, are not bound by federal law, despite consistent utilization of the federal analytical framework. *See Hulme v. Barrett*, 449 N.W.2d 629, 631 (Iowa 1989)."). Thus, until and unless the parties point to a potentially dispositive distinction between state and federal age discrimination law, the court will analyze Weitzel's state and federal age discrimination claims using federal precedent.

   *ii.     The burden-shifting analysis.* As the Eighth Circuit Court of Appeals recently explained, "[A plaintiff's] claims of age discrimination are . . . analyzed under the *McDonnell Douglas* burden-shifting framework." *Erenberg v. Methodist Hosp.*, 357 F.3d 787, 793 (8th Cir. 2004) (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 309- 10 (1996)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (inaugurating the burden-shifting analysis). Thus, the plaintiff must first establish a *prima facie* case of age discrimination, and if she does so, "'a rebuttable presumption of unlawful discrimination is created.'" *Kohrt v. MidAmerican Energy Co.*, 364 F.3d 894, 897 (8th Cir. 2004) (quoting *Mayer v. Nextel West Corp.*, 318 F.3d 803, 807 (8th Cir.), *cert. denied*, 540 U.S. 823 (2003)). To counter this presumption, the defendants must produce evidence of a legitimate, non-discriminatory reason for their adverse employment actions. *Id.* If the defendants meet their burden of production, the burden shifts back to the plaintiff, who "'must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant[s] were not [their] true reasons, but were a pretext for discrimination."'" *Id.* at 897-98 (quoting *Hitt v. Harsco Corp.*, 356 F.3d 920, 924 (8th Cir. 2004), in turn quoting *Reeves v. Sanderson Plumbing Prod. Inc.*, 530 U.S. 133, 143 (2000)).

***iii.*** ***The plaintiff's prima facie case***.  As to the first stage of the *McDonnell*

*Douglas* burden-shifting analysis, the Eighth Circuit Court of Appeals has explained,

> To make such a [*prima facie*] case under the ADEA, the plaintiff must ordinarily show that:  (1) he is a member of a protected age group; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he was discharged; and (4) he was replaced by a *younger* worker.

*Hitt*, 356 F.3d at 924 (emphasis added); *and compare Erenberg*, 357 F.3d at 793 ("'In

order to establish a prima facie case of age discrimination, the Plaintiff must show that she

"(1) is a member of the protected class; (2) was qualified for the position from which [s]he

was demoted or discharged; and (3) was replaced by another person.'") (quoting

*Rothmeier v. Inv. Advisers, Inc.*, 932 F. Supp. 1156, 1159 (D. Minn.), *aff'd*, 85 F.3d

1328 (8th Cir. 1996), in turn citing *McDonnell Douglas*, 411 U.S. at 802).

    The defendants concede, for purposes of their summary judgment motion, that

Weitzel can satisfy the first, third, and fourth elements of her *prima facie* case, but they

argue strenuously that she cannot satisfy the second.  As to the second element of the

plaintiff's *prima facie* case, the Eighth Circuit Court of Appeals recently held as follows:

> [The plaintiff] did not prove a prima facie case of age discrimination, because she failed to show that she was qualified for the position from which she was discharged.  It is undisputed that [the employer] identified deficiencies in [the plaintiff's] work performance, and that [the employer] communicated its findings to [the plaintiff] on a regular basis. [The plaintiff] was aware that she was not performing her duties in a way that met [the employer's] legitimate expectations.  The district court properly granted summary judgment for [the employer] on the claims of age discrimination.

*Erenberg*, 357 F.3d at 793. The defendants argue that it is undisputed that the same circumstances are present here, warranting summary judgment in their favor on Weitzel's *prima facie* case of age discrimination. However, Weitzel argues that the "identifi[cation of] deficiencies" in her work performance was, itself, the result of an age discriminatory animus. More specifically, she contends that it was not until a younger supervisor and a younger office manager started to "run the department" that she began to get negative performance reviews.

Weitzel's argument is, in essence, that the younger employees were allowed to "paper the file" in an effort to eject her from her position for age discriminatory reasons. "Papering" of an employee's performance or personnel file with negative information may suffice to constitute adverse employment action, if the "papering" adversely affected or undermined the employee's position. *See, e.g., Gagnon v. Sprint Corp.*, 284 F.3d 839, 851 (8th Cir. 2002) (citing *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997)), *cert. denied*, 537 U.S. 1001, 1014 (2002). Similarly, this court concludes that evidence of "papering" may also be sufficient to generate a genuine issue of material fact on the second element of an employee's *prima facie* case of discrimination, because such evidence of "papering" reasonably suggests that the file does not properly reflect whether or not the employee was actually meeting her employer's legitimate expectations, *see Hitt*, 356 F.3d at 924 (second element of the *prima facie* case is that the employee was performing her job at a level that met her employer's legitimate expectations), at least where the "papering" could adversely affect or undermine the employee's position by setting in motion a process that could lead to termination. *Cf. Gagnon*, 284 F.3d at 851 ("papering" must adversely affect or undermine the employee's position). Here, Weitzel has pointed to evidence sufficient to generate a genuine issue of material fact that Murphy and Merrill "papered" her file with negative information to try to demonstrate that she was not performing to her

employer's legitimate expectations so that she could be terminated, where her prior reviews by another supervisor were favorable and the negative information only began to appear with the involvement of Murphy and Merrill.

However, the Eighth Circuit Court of Appeals has held that it is not enough to show that supervisors or decisionmakers "papered" the plaintiff's personnel or performance file for the purposes of showing adverse employment action, in the absence of evidence that the "papering" was for a discriminatory or retaliatory reason. *See Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 99 (8th Cir. 2003) (reaching this conclusion as to racial discrimination); *see id.* at 992 (reaching this same conclusion as to retaliation). This court also agrees that "papering" would constitute adverse employment action sufficient to support a discrimination claim only if the "papering" was for a discriminatory or retaliatory reason, but in the context of a *prima facie* case of discrimination, the court suggests that a sufficient inference of discriminatory animus comes from the fourth element of the *prima facie* case, which requires the plaintiff to show that she was replaced by a *younger* worker. *See Hitt*, 356 F.3d at 924. Notwithstanding such views, the court concludes that, here, Weitzel has also generated a genuine issue of material fact that the "papering" was, indeed, for a discriminatory reason, where the negative information only began to appear with the involvement of Murphy and Merrill, both of whom were under forty years of age, while the previous supervisor who gave Weitzel positive reviews, Ms. Timmons, was over forty years of age. Thus, even if Weitzel was required at this stage of the burden-shifting analysis to generate a genuine issue of material fact that the "papering" of her file was for a discriminatory reason, *cf. id.*, she has done so.

*iv.* ***Legitimate reasons and pretext***. Because the court finds that Weitzel has established her *prima facie* case of age discrimination, or has at least generated genuine issues of material fact as to her *prima facie* case, the burden shifts to the defendants to

produce evidence of a legitimate, non-discriminatory reason for their decision to terminate her. *Kohrt*, 364 F.3d at 897. The performance file, "papered" or not, is sufficient to meet the employer's limited burden at this stage of the analysis. Thus, the court continues to the final stage of the burden-shifting analysis.

As the Eighth Circuit Court of Appeals has explained,

> If the employer provides a non-discriminatory reason, the presumption of discrimination disappears, and the plaintiff can only avoid summary judgment if he or she presents evidence that considered in its entirety, (1) creates a question of material fact as to whether the defendant's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision.

*Hindman v. Transkrit Corp.*, 145 F.3d 986, 991 (8th Cir. 1998); *see also Kohrt*, 364 F.3d at 897 (quoting this statement from *Hindman*). The defendants contend that Weitzel cannot make the necessary showing. The court disagrees.

First, the court finds that Weitzel's evidence of "papering" is sufficient to create a genuine issue of material fact that Weitzel's purported poor performance was not the real reason for her termination. *See id.* (first required showing). Moreover, Weitzel has generated genuine issues of material fact that her age was a determinative factor in her termination. *See id.* (second required showing). This is so, even if the defendants are correct that Weitzel must come forward with something more than her *prima facie* case.[2]

---

[2]The court does not agree with this proposition. The case on which the defendants rely, *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 428 (8th Cir. 1999), does not, as the defendants contend, stand for the proposition that "Weitzel is also required at this third stage to come forward with something more than just her prima facie case." Defendants' Brief In Support Of Motion For Summary Judgment, 7. The court in *Walton* actually held that "to defeat summary judgment, [the plaintiff] 'must present affirmative
(continued...)

Weitzel has pointed to evidence sufficient to generate a genuine issue of material fact that Murphy and Merrill "papered" her file with negative information to lay the groundwork for her termination, and that they did so for an age discriminatory reason, where the negative information only began to appear with the involvement of Murphy and Merrill, both of whom were under forty years of age, while the previous supervisor who gave Weitzel positive reviews, Ms. Timmons, was over forty years of age. Weitzel has also pointed to evidence that these younger employees were allowed far more involvement in evaluating her work than their older predecessors, that Murphy kept changing her job requirements, and that Murphy and Martin gave her the impossible task of completing the victim witness database, when there were problems with the computer system beyond her control. Furthermore, she has pointed to evidence that other employees noticed an improvement in her work after problems were brought to her attention, as well as evidence that she was better qualified for her job than her younger replacement. Thus, there is sufficient evidence beyond Weitzel's *prima facie* case to generate genuine issues of material fact that Weitzel's purported poor performance was not the real reason for her discharge *and* that age discrimination was the real reason. *See Hindman*, 145 F.3d at 991 (to avoid summary judgment, the plaintiff must show that the defendant's proffered reason is a pretext and that the real reason is a discriminatory animus).

---

[2](...continued)
evidence,' not simply contend that a jury might disbelieve [the defendant's] evidence [of a legitimate reason for its actions]." *Walton*, 167 F.3d at 428. Moreover, the correct standard was recently reiterated by the Eighth Circuit Court of Appeals to be that "the plaintiff's prima facie case combined with sufficient evidence of pretext *may* permit the jury to find unlawful discrimination." *Griffith v. City of Des Moines*, 387 F.3d 733, 735 (8th Cir. 2004) (citing *Reeves v. Sanderson Plumbing Prod. Inc.*, 530 U.S. 133, 148 (2000), with emphasis in the original, and reaffirming this standard even in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)).

The defendants also argue that where, as here, the same actor, County Attorney Martin, both hired and fired the plaintiff, within a relatively short time, and the plaintiff was already in the protected class at the time that she was hired, the inference of discrimination is seriously weakened. *See Lowe v. J.B. Hunt Tranp., Inc.*, 963 F.2d 173, 175 (8th Cir. 1992) (holding that age discrimination was not shown where the plaintiff was hired by the same person who shortly thereafter terminated him and where the plaintiff was in the protected age group at the time he was hired); *see also Kells v. Sinclair Buick-GMC Truck, Inc.*, 210 F.3d 827, 835 (8th Cir. 2000) (so characterizing the holding in *Lowe*). However, "[t]he holding of *Lowe* is limited to cases where no evidence of overt discrimination has been presented." *Kells*, 210 F.3d at 835. Where "other circumstances are inferential proof of overt discrimination," an inference of illegal discrimination may arise, notwithstanding that the plaintiff was hired and fired by the same actor. *Id.* Here, as recounted above, there is evidence of "other circumstances [that are] inferential proof of overt [age] discrimination." *Id.* Thus, the fact that the "same actor" hired and fired Weitzel does not fully abate the inference of age discriminatory action.

This is not to say that Weitzel's age discrimination claims do not present a very close question. A jury could, quite reasonably, find in the defendants' favor on all disputed issues. However, the judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick*, 90 F.3d at 1376-77. Moreover, it is precisely because summary judgment often turns on inferences from the record that summary judgment should rarely be granted in employment discrimination cases. *See, e.g., Crawford*, 37 F.3d at 1341. This is a case that turns on such inferences. Therefore, the defendants' motion for summary judgment on Weitzel's claims of age discrimination in violation of the ADEA, the ICRA, and the MCHRC will be denied.

### 2. Age discrimination claims pursuant to § 1983

The court noted above that Weitzel has also brought her claim of age discrimination in violation of the ADEA pursuant to 42 U.S.C. § 1983. The Eighth Circuit Court of Appeals has not decided whether or not a plaintiff may bring an age discrimination claim pursuant to § 1983, as well as pursuant to the ADEA and state law. *See Allen v. City of Pochahontas, Ark.*, 340 F.3d 551, 558 n.4 (8th Cir. 2003) (the court stated, "As the District Court noted, there is some question whether an age discrimination claim can be brought pursuant to § 1983 or whether all such claims must be brought pursuant to the ADEA," but concluded "[t]his is not the case in which to resolve that issue," apparently because the age discrimination claim foundered on the plaintiff's failure to point to any evidence that legitimate reasons for her termination were pretextual), *cert. denied*, 540 U.S. 1182 (2004). Because the court finds that Weitzel's age discrimination claims are otherwise viable, the court must consider whether or not they can be brought pursuant to § 1983.

#### a. Arguments of the parties

Assuming for the sake of argument that the Eighth Circuit Court of Appeals would recognize an age discrimination claim under § 1983, the defendants contend that such a claim must fail here for the same reasons that Weitzel's age discrimination claims fail under the ADEA and state law. Of course, the court rejected this argument above. In addition, the defendants argue that Weitzel cannot show that either Martin or Murphy acted "under color of state law," because she cannot show that they abused the positions given to them by the state and there is no nexus between their official conduct and the purported violation of Weitzel's right to be free of age discrimination. The individual defendants' employment with the state does not suffice, standing alone, they contend, to show that their actions were taken "under color of state law," where they did not act pursuant to the

power they possessed by state authority. They point out, further, that a non-supervisory employee, such as defendant Murphy, cannot be liable to Weitzel pursuant to § 1983. Next, the defendants contend that Cerro Gordo County is not a cognizable defendant under § 1983, because the only basis for its liability would be respondeat superior, which is not available under § 1983, because Weitzel has neither alleged nor pointed to evidence of a custom or practice of the County from which her claim of age discrimination arose.

Weitzel's response to these arguments is terse at best. She contends that § 1983 provides a cause of action for violation of rights secured by the Constitution *and laws* of the United States, and the ADEA is such a law of the United States. She next contends that the individual defendants can be held liable under § 1983, because they are government officials. Finally, she contends that the County can be liable for age discrimination, because the illegal practice at issue here is the violation of the ADEA.

### b. Analysis

Contrary to the parties' contentions, the court finds that the key issue is not whether certain defendants can be liable on a claim pursuant to § 1983, but whether an age discrimination claim is cognizable under § 1983. A clear majority of courts has held that, because the ADEA and Title VII provide comprehensive remedial schemes, plaintiffs cannot employ § 1983 to enforce the rights created by those statutes, unless the rights also have an independent basis in the Constitution. *See, e.g., Migneault v. Peck*, 158 F.3d 1131, 1140 (10th Cir. 1998) ("For numerous, well-founded reasons we need not repeat here, both the Fourth and Fifth Circuits have concluded that age discrimination claims brought under § 1983 are preempted by the ADEA. *See Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 760 (5th Cir. 1997) (granting qualified immunity from Equal Protection claim for age discrimination because the ADEA provides the sole remedy for age discrimination claims by individuals); *Zombro v. Baltimore City Police Dep't*, 868 F.2d

24

1364, 1369 (4th Cir. 1989), *cert. denied*, 493 U.S. 850, 110 S. Ct. 147, 107 L. Ed. 2d 106 (1989) (holding the ADEA provides the exclusive judicial remedy for claims of age discrimination)."), *vacated on other grounds sub nom. Board of Regents of Univ. of New Mexico v. Migneault*, 528 U.S. 1110 (2000); *cf., e.g., Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) (a plaintiff could not bring a § 1983 action for violation of Title VII, but could bring a concurrent § 1983 action for violation of a distinct constitutional right arising from the same circumstances); *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998) ("[A]n allegation of a Title VII violation cannot provide the sole basis for a § 1983 claim."); *Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984) ("Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII."); *see also Porter v. Illinois Dep't of Children and Family Servs.*, 165 F.3d 32, 1998 WL 847099, **7 (7th Cir. 1998) (unpublished op.) (so holding as to Title VII and the ADEA). Here, Weitzel alleges no independent constitutional violation. Rather, she expressly argues that the federal laws upon which her § 1983 claim is based are the ADEA and the FMLA. *See* Plaintiff's Memorandum At Law In Support Of Resistance To The Defendant's Motion For Summary Judgment, 12; *see also* Amended Complaint, Fourth Cause of Action, ¶¶ 54-56 (realleging prior allegations and expressly stating that "the conduct by Defendants, heretofore set forth in this petition violate the defendant's federal statutory rights and privileges, and as such are a direct violation of 42 U.S.C. § 1983."). This court, therefore, concludes that the remedial scheme for age discrimination under the ADEA is sufficient to preclude an action pursuant to § 1983 to the extent that the § 1983 action is based on an alleged violation of the ADEA.

The defendants' motion for summary judgment will be granted on Weitzel's age discrimination claim pursuant to § 1983.

### 3.    Individual liability

#### a.    Arguments of the parties

The court turns, next, to the defendants' contention that defendants Martin and Murphy cannot be held individually liable for age discrimination in violation of the ADEA, even if such a claim is otherwise viable.  In support of this contention, the defendants argue that, even though the Eighth Circuit Court of Appeals has not addressed the question, most of the other Circuit Courts of Appeals to do so have held that the ADEA does not provide for individual liability.  They contend that this court has also so held. Therefore, they contend that the court should grant summary judgment in favor of Martin and Murphy on Weitzel's claim that they are individually liable for age discrimination under the ADEA.

Purportedly in response to this portion of the defendants' motion for summary judgment, Weitzel makes the argument, not put at issue by the defendants, that IOWA CODE § 216.6 clearly states that a "person" and "employees" can violate the ICRA and that the Iowa Supreme Court has held that supervisory employees can be held individually liable under the ICRA.  Although Weitzel does not contend that individuals can be held liable for age discrimination under the ADEA, she does appear to argue that Martin and Murphy can be held individually liable for age discrimination in violation of the ADEA pursuant to 42 U.S.C. § 1983.

#### b.    Analysis

In *Nelson v. Long Lines, Ltd.*, 335 F. Supp. 2d 944 (N.D. Iowa 2004), this court did, indeed, hold that "the ADEA does not provide for individual liability," notwithstanding that the Eighth Circuit Court of Appeals had not explicitly decided the issue, because "the majority of the other federal circuit courts of appeals have uniformly held that the ADEA does not provide for individual liability."  *Nelson*, 335 F. Supp. 2d

at 964 n.5 (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 686 (5th Cir. 2001) ("[T]he ADEA 'provides no basis for individual liability for supervisory employees.'") (quoting *Stults v. Conoco*, 76 F.3d 651, 655 (5th Cir. 1996)); *accord Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313- 17 (2d Cir. 1995) (no individual liability under Title VII); *Smith v. Lomax*, 45 F.3d 402, 403 n. 4 (11th Cir. 1995) (no individual liability under the ADEA); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510, 511 (4th Cir.) (no individual liability under the ADEA), *cert denied*, 513 U.S. 1058 (1994); *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587 (9th Cir. 1993) (no individual liability under Title VII or the ADEA) (citing *Padway v. Palches*, 665 F.2d 965, 968 (9th Cir. 1982)); *see also Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404-05 (6th Cir. 1997) (interpreting Title VII but also finding the liability schemes under Title VII, the ADEA, and the ADA essentially the same in aspects relevant to this issue)).  Weitzel has offered no argument for a contrary conclusion.  Therefore, this court reaffirms its conclusion that individual defendants Martin and Murphy cannot be held individually liable under the ADEA, and will grant this portion of the defendants' motion for summary judgment.

A closer question might have been presented on Weitzel's suggestion that the individual defendants can be held individually liable for age discrimination pursuant to § 1983, if that claim had survived summary judgment.  However, the court need not entertain that question where the court has concluded that the § 1983 claim is barred by the comprehensive scheme of the ADEA.

Although the court does not read the defendants' motion for summary judgment to put the matter at issue, Weitzel asserts that Martin and Murphy can be held individually liable for age discrimination under the ICRA.  This court agrees.  *See Vivian v. Madison*, 601 N.W.2d 872, 878 (Iowa 1999) (holding as a matter of first impression, on a certified question from the United States District Court for the Southern District of Iowa, "that a

supervisory employee is subject to individual liability for unfair employment practices under Iowa Code section 216.6(1) of the Iowa Civil Rights Act"). Therefore, Weitzel may still seek to hold the individual defendants individually liable for age discrimination pursuant to Iowa law, even if she cannot recover against the individual defendants on her federal age discrimination claim.

### C. *Weitzel's FMLA Claims*

Weitzel's Third Cause of Action alleges interference with her rights under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615 *et seq.*, and retaliation for exercising such rights. Her Fourth Cause of Action also alleges "deprivation of federal rights," including rights under the FMLA, pursuant to 42 U.S.C. § 1983. The defendants have moved for summary judgment on these claims, as well.

#### 1.    *Arguments of the parties*

The defendants contend that Weitzel cannot generate genuine issues of material fact on her claim of interference with FMLA rights and cannot establish a *prima facie* case of retaliatory discharge in violation of the FMLA. Somewhat more specifically, as to Weitzel's "interference" claim, the defendants contend that it is not entirely clear whether the *McDonnell Douglas* burden-shifting paradigm applies to such a claim, because the Eighth Circuit Court of Appeals appears to apply an "objective test" to such claims, which only requires the plaintiff to prove that her taking of FMLA-protected leave constituted a negative factor in the employer's decision to terminate her. Applying this test, the defendants contend that there is no dispute that Weitzel's request for FMLA leave was granted, and indeed, her leave was extended without a medical certification or a second opinion and even though County Attorney Martin had become aware that Weitzel was working part-time while on leave from the County Attorney's Office. The defendants also

contend that a telephone conference between Martin and Weitzel concerning when she would return to work does not constitute "interference," because she was not compelled to come back to work or even to come into the County Attorney's Office to discuss the matter. The defendants contend, further, that the discovery of performance problems with Weitzel's work while she was on leave and the monitoring of her work when she returned did not interfere with her actual FMLA leave.

As to Weitzel's FMLA retaliation claim, the defendants contend that there is merely a temporal connection between her FMLA leave and her termination, but no causal connection. Rather, they contend that they became legitimately concerned about Weitzel's performance while she was on FMLA leave (and indeed, had been concerned before she took such leave), and her performance did not improve after she returned from FMLA leave. Even if Weitzel can generate a *prima facie* case of retaliation for taking FMLA leave, the defendants contend that she cannot make the necessary showing of pretext and retaliatory animus, because Martin's reasons for firing her were wholly legitimate.

The defendants acknowledge that individual co-workers can be liable for FMLA violations, but they contend that, where Weitzel cannot generate any genuine issues of material fact to support her claims of FMLA violations, the individual defendants cannot be held liable for such violations.

In response, Weitzel does not attempt to support her claim of "interference" with her FMLA rights. Instead, she focuses entirely on her claim of "retaliation" for exercising FMLA rights. She contends that the retaliatory action consisted of her termination as well as lesser adverse employment action, such as placing her on a "working suspension" after her return from leave ostensibly because of poor performance, because that "working suspension" put her in a position to be terminated and her usual job duties were negatively affected. She also contends that she can make the necessary showings that FMLA

retaliation was the reason for the allegedly retaliatory actions, because Martin accused her of "milking the system"; she got a negative job review the day after her return to work, the negative comments in the review were not justified, because she was being held to a different standard from her co-workers, and it was not time for her regular job review, all of which suggest that Martin and Murphy were disgruntled that she took time off; she was given a new job description shortly after she notified Martin and Murphy that she needed to take FMLA leave; she was improperly penalized for failing to complete the database project, when the problem was with the system, not with her attempts to complete the project; and the defendants refused to participate in various "corrective action meetings" to help her improve her performance.

### 2. *Analysis*

The FMLA prohibits "interference" with the rights established by the statute and "retaliation" for exercising those rights, as well as "discrimination" for opposing practices made unlawful by the FMLA. *See Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005) ("The FMLA makes it 'unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under' the FMLA. 29 U.S.C. § 2615(a)(1). A violation of this provision creates what is commonly known as the interference theory of recovery. 29 U.S.C. § 2617; *see, e.g., Smith [v. Diffee Ford-Lincoln-Mercury, Inc.]*, 298 F.3d [955,] 960 [(10th Cir. 2002)]. The FMLA also makes it 'unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by' the FMLA. 29 U.S.C. § 2615(a)(2). A violation of this provision creates what is commonly known as the discrimination theory of recovery. 29 U.S.C. § 2617; *see, e.g., Smith*, 298 F.3d at 960."); *McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1002 ("Retaliation through an adverse employment action based on an employee's exercise

of FMLA rights is actionable.") (citing *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002), which in turn cites 29 U.S.C. §§ 2612 and 2615(a)(2)).

Although Weitzel pleaded both "interference" and "retaliation" claims under the FMLA, and the defendants challenged both in their summary judgment motion, Weitzel has attempted to support only her "retaliation" claim. Because the defendants have met their "initial responsibility of informing the district court of the basis for [their] motion" for summary judgment on Weitzel's FMLA "interference" claim by "identifying those portions of the record which show lack of a genuine issue," *Hartnagel*, 953 F.2d at 395, and Weitzel has not met her burden on this claim under Rule 56(c) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial," FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, the defendants are "entitled to judgment as a matter of law" on Weitzel's FMLA "interference" claim. *Celotex Corp.*, 477 U.S. at 323.

The court turns to Weitzel's FMLA "retaliation" claim, on which Weitzel has attempted to generate genuine issues of material fact. As to such claims, the Eighth Circuit Court of Appeals recently explained,

> An employee can prove FMLA retaliation circumstantially, using a variant of the burden shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). [*Smith*, 302 F.3d at 832.]
>
> To establish a prima facie case of retaliation, [the plaintiff] must show [1] that he exercised rights afforded by the Act, [2] that he suffered an adverse employment action, and [3] that there was a causal connection between his exercise of rights and the adverse employment action. *Id.*; *Darby v. Bratch*, 287 F.3d 673 (8th Cir. 2002).

*McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1002 (8th Cir. 2005). As to the third element, the one principally at issue here, the Eighth Circuit Court of Appeals explained that "the kind of causal connection required for a prima facie case is not 'but for' causation, but rather, a showing that an employer's 'retaliatory motive played a part in the adverse employment action.'" *Id.* at 1003 (quoting *Kipp v. Missouri Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002), with internal quotation omitted). A close temporal connection between the FMLA leave and the allegedly retaliatory action may also help establish the causal connection. *Id.*; *see also Smith*, 302 F.3d at 832 (noting that, generally, more than mere temporal proximity is required to establish a causal connection between protected activity and adverse employment action, but "we have sometimes held that the timing of one incident of adverse action following protected activity sufficed to establish causal connection").

Here, the court finds that there was a close temporal connection between Weitzel's taking FMLA leave and the adverse employment action of firing her. *See id.* The defendants nevertheless contend that there is no actual "causal" connection, because Weitzel's termination was entirely the result of her poor job performance before and after her FMLA leave. The court concludes that a reasonable jury could see the evidence differently, such that Weitzel has generated genuine issues of material fact on her *prima facie* case of FMLA "retaliation." For example, Weitzel has pointed to evidence that Murphy increased her efforts to redefine Weitzel's job after Weitzel indicated informally that she would need to take medical leave; the defendants increased their scrutiny of her performance *while she was gone*; the defendants questioned the validity of her medical leave; and the defendants "pounced" on her with a negative job review the moment she returned from medical leave. Weitzel contends that all of this evidence reasonably

suggests that the defendants were disgruntled because she took medical leave and were retaliating for it. The court agrees that such an inference is reasonable. Thus, the defendants are not entitled to summary judgment on the basis that Weizel cannot establish a *prima facie* case of FMLA "retaliation."

As with other claims involving the *McDonnell Douglas* burden-shifting analysis, in FMLA "retaliation" cases, "the *McDonnell Douglas* battle is only begun with the prima facie case." *Smith*, 302 F.3d at 833. Consequently,

> [i]f the employer comes forward with evidence of a legitimate, nondiscriminatory reason for its treatment of the employee, the employee must then point to some evidence that the employer's proffered reason is pretextual. *Kiel [v. Select Artificials, Inc.]*, 169 F.3d [1131,] 1135 [(8th Cir. 1999) (en banc)]. [Where the employer] has come forward with evidence of a reason other than retaliation for [the employee's] discharge . . . , [the employee] [i]s then obliged to present evidence that (1) creates a question of fact as to whether [the employer's] proffered reason was pretextual and (2) creates a reasonable inference that [the employer] acted in retaliation. *See Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 726 (8th Cir. 2001). To carry the burden of showing pretext, [the employee] had to show that [the employer's] justification for the firing was unworthy of credence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

*Smith*, 302 F.3d at 833-34. The court must consider these further steps in the analysis.

The defendants contend that Weitzel was terminated for poor performance and they are correct that a person who has taken FMLA leave may be terminated for poor performance without the employer necessarily incurring liability for "retaliation" under the FMLA. *See Sanders v. May Dep't Stores Co.*, 315 F.3d 940, 946 (8th Cir. 2003) (refusing to grant a new trial on a "retaliation" claim under the FMLA because the jury

reasonably determined that the plaintiff was terminated for poor performance), *cert. denied*, 539 U.S. 942 (2003); *Smith*, 302 F.3d at 834 (the "nature and magnitude of [the plaintiff's] dereliction" required more than temporal proximity between the plaintiff's FMLA leave and termination to establish pretext and retaliatory intent). Thus, the defendants have identified a legitimate reason for terminating Weitzel.

As to the question of whether the defendants' reason is a pretext for discrimination, the court notes that "[e]vidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity" between FMLA leave and adverse, purportedly retaliatory action. *Smith*, 302 F.3d at 834. However, contrary to the defendants' assertions, Weitzel has generated genuine issues of material fact that the defendants' reason for terminating her—allegedly persistent poor performance before and after her FMLA leave—is not worthy of credence and that the reason is, instead, retaliation. *Id.* at 833 (setting out these two prongs of the plaintiff's necessary showing to rebut the employer's legitimate reasons for adverse employment action). Again, Weitzel has pointed to evidence that, even though the concerns about Weitzel's performance had purportedly existed for some time, *see id.* at 834 (stating that such evidence "undercuts" the significance of temporal proximity between adverse action and FMLA leave), those concerns were the result of "papering" her performance file. She has also pointed to evidence that, after her leave, she was given a task to perform as a condition of her continued employment, completion of the database project, which simply could not be performed owing to problems with the computer system, but the consequences of the failure were still visited upon her. She has also pointed to evidence that Martin and Murphy were uncooperative in holding meetings with her that they contend were required as a condition of her continued employment. Under

the circumstances, a reasonable jury could conclude that Weitzel's exercise of her right to FMLA leave was the real reason for her termination.

Again, this is not to say that Weitzel's FMLA "retaliation" claim does not present a very close question. A jury could also reasonably see the evidence in the light in which the defendants cast it. However, the judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick*, 90 F.3d at 1376-77. Because this case turns on inferences from the record, this is not one of those rare employment cases in which summary judgment is appropriate. *See, e.g., Crawford*, 37 F.3d at 1341. Therefore, the defendants' motion for summary judgment on Weitzel's FMLA "retaliation" claim will be denied.

### 3.  *FMLA claims pursuant to § 1983*

Weitzel has also asserted her claims of violations of the FMLA pursuant to 42 U.S.C. § 1983, and the defendants have also sought summary judgment on such claims. Because the FMLA "retaliation" claim is otherwise viable, the court must consider whether such a claim is actionable pursuant to § 1983.

For much the same reason that the court concluded above that § 1983 claims cannot be based upon violations of the ADEA, the court now concludes that § 1983 claims cannot be based upon violations of the FMLA. *See Cavin v. Honda of Am. Mfg., Inc.*, 138 F. Supp. 2d 987, 993 (S.D. Ohio 2001) ("This Court concludes that the enforcement scheme of the FMLA, like that of the FLSA, and Title VII provides the exclusive remedy for a violation of the Act, and that plaintiff's cause of action under 42 U.S.C. § 1983 must be dismissed."), *aff'd in part and rev'd in part on other grounds*, 346 F.3d 713 (6th Cir. 2003); *Kilvitis v. County of Luzerne*, 52 F. Supp. 2d 403, 419 (M.D. Pa. 1999) (the FMLA provides "comprehensive remedial measures that evinces Congress' intent to

foreclose the use of a § 1983 action."); *Desrochers v. Hilton Hotels Corp.*, 28 F. Supp. 2d 693, 695 (D. Mass. 1998) ("Of the courts that have considered the relationship between Section 1983 and the FMLA, all but one of these courts have held that Section 1983 does not provide an alternative means of enforcing the rights granted by the FMLA. *Compare O'Hara v. Mount Vernon Board of Education*, 16 F. Supp. 2d, 868, 895 (S.D.Ohio 1998) and *Jolliffe v. Mitchell*, 971 F. Supp. 1039, 1045 (W.D.Va.1997) and *Clay v. City of Chicago, Department of Health*, 1996 WL 613164 at *2 (N.D.Ill.1996) with *Peterson v. Slidell Memorial Hospital and Medical Center*, 1996 WL 732840 at *3 (E.D.La.1996). In *Peterson*, the one case in which a court allowed duplicative Section 1983 and FMLA claims, no explanation or analysis was given for the court's action. This Court accepts the cogent reasoning of the courts that have barred the Section 1983 claims: the comprehensive detailed enforcement provisions of the FMLA show Congress' intention that the specific remedies set forth in Section 2617 of the FMLA are the exclusive remedies for the violation of the FMLA. *See O'Hara v. Mount Vernon Board of Education*, 16 F.Supp 2d, 868, 895 (S.D.Ohio 1998) (barring Section 1983 claim)."); *O'Hara v. Mt. Vernon Bd. of Educ.*, 16 F. Supp. 2d 868, 895 (S.D.Ohio 1998) (a § 1983 action premised on a violation of the FMLA is foreclosed).

Therefore, the defendants are entitled to summary judgment on Weitzel's § 1983 claim to the extent that such a § 1983 claim is based on a violation of the FMLA.


### III. CONCLUSION

Upon the foregoing, the court concludes that Weitzel is entitled to take to a jury her claims of age discrimination in violation of the ADEA, the ICRA, and the MCHRC, and her claim of "retaliation" for exercising rights under the FMLA. However, the defendants are entitled to summary judgment on the entirety of Weitzel's § 1983 claim based on

violations of the ADEA and the FMLA, because those statutes provide the exclusive remedies for such violations. While the individual defendants cannot be held liable for violations of the ADEA, they can be held liable on the state-law claims of age discrimination and the FMLA "retaliation" claim.

THEREFORE,

1.      The defendants' February 25, 2005, Motion For Summary Judgment (docket no. 24) on the plaintiff's First Cause of Action for age discrimination in violation of the ADEA is

> a.      **granted** as to the liability of the individual defendants; but
>
> a.      **otherwise denied**.

2.      The defendants' February 25, 2005, Motion For Summary Judgment (docket no. 24) on the plaintiff's Second Cause of Action for age discrimination in violation of the ICRA and the MCHRC is **denied** in its entirety.

3.      The defendants' February 25, 2005, Motion For Summary Judgment (docket no. 24) on the plaintiff's Third Cause of Action for violation of the FMLA is

> a.      **granted** as to the plaintiff's "interference" claim, and that claim is dismissed, but
>
> b.      **denied** as to the plaintiff's "retaliation" claim.

4.      The defendants' February 25, 2005, Motion For Summary Judgment (docket no. 24) on the plaintiff's Fourth Cause of Action pursuant to 42 U.S.C. § 1983 for violation of the ADEA and the FMLA is **granted** and that claim is dismissed in its entirety.

This matter will proceed to trial on the remaining age discrimination and FMLA "retaliation" claims.

**IT IS SO ORDERED.**

**DATED** this 11th day of May, 2005.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA